EDITH B. JACKSON *et al. vs.* RALPH BLOMSTEDT *et al.*

JUNE 4, 1954.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

FLYNN, C. J.   This bill in equity for the construction of the will of John Blomstedt, late of the town of East Providence in this state, deceased, was certified under general laws 1938, chapter 545, §7.

The complainants are the testator's surviving children. The respondents are the five children of Edward Blomstedt, a deceased child of said testator, and the issue if any of Charles J. Blomstedt, another son whose whereabouts are unknown.   Actual service upon all known and living respondents was obtained, and on their failure to file answers a decree *pro confesso* was entered against them.   An order of notice was duly published for service on all unknown persons having a possible or unascertainable interest. Guardians *ad litem* of the minor issue if any of said Charles J. Blomstedt, and of such issue if any in the military service, and for all the contingent interests of persons not in being and not ascertainable, were duly appointed.   They have filed answers submitting such interests to the court.   When the cause was ready for hearing for final decree it was certified for construction by this court.

It appears that John Blomstedt died October 20, 1932, leaving a will which had been executed by him on March

13, 1907. By that will he devised and bequeathed all of the residue of his estate, after funeral expenses and debts were paid, to his wife Ulrika Albertina Blomstedt, who is the same person designated throughout these proceedings as Ulrica A. Blomstedt.

The will makes no mention of any of his children or the issue of any deceased child. At the time he executed such will the testator had eight children, all of whom were living. One of his sons, Charles J. Blomstedt, left home in 1924 and since that time no one has heard anything from or about him. Another son, Edward Blomstedt, died in 1926, leaving five children all of whom are of age and are named as respondents. On different occasions John Blomstedt, the testator, both before and after the disappearance of Charles and after the death of Edward, made it known to others that he intended to give and had arranged to give all his property to his wife.

Upon his death, in accordance with the terms of the will, the widow took possession of all his property. For nineteen years thereafter she had continuous and uninterrupted possession thereof. No adverse claim was made by any of the testator's children or by any of the children of the deceased son Edward, or by the issue, if any, of the son Charles who had gone away in 1924.

The question underlying the certification is whether any of the respondents had an interest in John's estate by virtue of G. L. 1938, chap. 566, §22. That statute, which at the time of the testator's death was the same under public laws 1931, chap. 1754, provides in part as follows:

"When a testator omits to provide in his will for any child of his born after the execution of his will, either during his lifetime or after his death, or for any issue of a deceased child of his dying after the execution of his will * * * such child or issue shall take the same share of the testator's estate as such child or issue would have been entitled to if the testator had died intestate,

unless it appears that the omission was intentional and not occasioned by accident or mistake."

This court has held that a testator's intention to omit any of his children or the issue of any deceased child may be shown from the will itself or by parol extrinsic evidence. See *Horton* v. *Horton*, 46 R. I. 492; *Rhode Island Hospital Trust Co.* v. *Hail*, 47 R. I. 64; *McPhillips* v. *McPhillips*, 70 R. I. 179. In *Horton* v. *Horton, supra*, at page 496, it was stated: "The statute operates when and only when the will can not be supported by evidence showing that the testator meant what he said when he disposed of his property by will and omitted to provide for one of his children or the issue of a deceased child." It has also been held that the statute is designed to prevent injustice, and one claiming title by virtue of the statute cannot in good conscience delay assertion of his claim until many of those who could testify to the facts are dead and then complain of the lack of such testimony. *Quigley* v. *Spencer*, 54 R. I. 228.

In the instant case the will of John Blomstedt gave all his real and personal property to his wife, which was not an unnatural or unusual disposition. All his eight children were alive when the will was executed and he plainly omitted to give anything to or to mention any of such children. In our judgment it was hardly accidental to omit *all* eight children. The inference is strong that he intended the disposition to his wife as written in his will. His oral statements to others, after his will was executed and both before and after the death of Edward and the disappearance of Charles, tend to confirm the continuance of his intent as expressed in the will, which he never changed.

Moreover, while perhaps not conclusive, the attitude of all his children who were of age at his death indicate their contemporary knowledge of his intent to omit them from benefiting directly under his will. The failure of any of such children, or of the issue of the deceased son Edward, to make an adverse claim at any time, even in these pro-

ceedings, strongly indicates their knowledge and understanding that the testator's intent was as written in his will. And the failure of any child or the issue of a deceased child to claim an interest in the property or to share any of the expense of its upkeep for nineteen years of continuous and uninterrupted occupation by the testator's widow under the will tends further to corroborate the fact that the children understood that the omission from their father's will was intentional.

As to Charles, who disappeared in 1924 and has not been heard of by any person since that time, there is a presumption of his death. That presumption is strengthened by his total failure to communicate with his mother, whereas it had always been his custom to do so within a few days of any previous departure. He was of age and single when he left his home, and there is no fact known to any of the parties which would indicate that he had ever married or that he might be living. Despite investigations by the guardian *ad litem* and apparently by the insurance company, no word whatever has been obtained as to his whereabouts or marital status or whether he ever had any issue.

Under his mother's will Charles was expressly included, as were the other children, in a share of her estate, which disposed of the property devised to her by the will of John Blomstedt. She provided that if Charles should make his location known to her executors within two years after their qualification he should share equally, but that otherwise his share should go to the other living children. That time has now passed and no word from him has been received and no claim in his behalf has been made. In our opinion these facts together amply confirm what is expressly stated in the will of John Blomstedt, namely, that he fully intended to give the whole residue of his estate, real and personal, to his wife; and that his failure to include or mention any child, or the issue of any deceased child, or the

issue if any of the absent Charles, was intentional and not the result of accident or mistake.

On June 9, 1954 the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Hinckley, Allen, Salisbury & Parsons, Stuart H. Tucker, John H. Chafee,* for complainants.

*William Lane Bruce,* Guardian *ad litem,* James K. Edwards, Attorney.

*Frederick Lippitt* for issue, if any, in Military Service.