RAFFAELE ABATIELL ET AL *v.* CLEO D. MORSE.

(56 A2d 464)

Special Term at Rutland, November, 1947.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 6, 1948.

*Stafford, Abatiell & Stafford* for the plaintiff.

*Vernon J. Loveland* and *Christopher A. Webber* for the defendant.

SHERBURNE, J.   This is a bill in chancery to enjoin the obstruction of a claimed right of way.   After a hearing findings of fact were made, and a decree was entered dismissing the bill.   The case is here upon plaintiff's exceptions.

The findings, so far as here material, show that the plaintiffs own a lot of land upon the easterly side of Strongs Avenue in the City of Rutland, upon which is a large building containing in the northerly part thereof a store upon the ground floor and an apartment over the store.   The land next north of this lot is owned by the defendant.   The division line runs along the north side of plaintiffs' building, and so near to it that the plaintiffs do not own enough land on that side to permit passage from Strongs Avenue to the rear thereof either on foot or with vehicles.   There is a rear entrance to the apartment and to the store on the north side of the building located about fifty feet from Strongs Avenue.   There is no way to reach this entrance without passing over defendant's land.   There is also a front entrance to the store and to the apartment directly from Strongs Avenue.   Since they purchased the property in 1916 the plaintiffs have claimed to own enough land north of their building to permit passage with motor vehicles, and at no time

intended to claim only to the true line, wherever that line might be. Plaintiffs now claim a right of way there. In 1916, and for many years thereafter, the defendant's lot was vacant except for billboards standing thereon. In 1932 or 1933 a filling station was erected thereon. Findings 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 28, 30, 31 and 32 read as follows:

"15. Every year from 1916 through 1945, the plaintiff Raffaele and his minor children annually repaired and improved the strip in question for use as a driveway. They put in fill and graded. Such repairs and improvements were not extensive; there has been and is a little distinction between the claimed right of way and the adjacent part of the defendant's lot. No one else other than the Abatiell family ever made repairs or improvements to the strip in question.

"16. Plaintiff Raffaele has occasionally walked around and inspected, sat there, and cleaned up. He and his children, both minor and adult, have parked and washed their cars there.

"17. The inference is that in making these repairs and improvements Raffaele was acting for the benefit of both himself and the tenants of the store and the apartment.

"18. The improved and used strip, i.e., the disputed strip or the claimed right of way, is of sufficient width to permit passage with ordinary trucks.
. . .
"19. The major part of the actual use of the disputed strip has been by tenants of the plaintiffs and their guests, customers of the store, deliverers of merchandise to tenants of the store (hereinafter referred to as 'tenants and those associated with them') and the plaintiffs' adult children, these latter for their own purposes, not those of the parents. It is impossible to be precise, but I believe that ninety percent of the use was of this character.

"20. The use of the disputed strip by the tenants and those associated with them has been at all times

with the knowledge and assent of the plaintiffs. It was not, however, under any express authority from the plaintiffs. Plaintiffs were at all times in a position to claim, if need be, that the acts of the tenants were their own acts, not those of the landlord.

"21. The plaintiffs never operated the store. They leased it at least six times, and the apartment was continuously occupied by several successive tenants. None of the leases, either of the store or of the apartment, purported to lease any land or right of way north of the plaintiffs' building.

"22. Merchandise was commonly delivered to the store from trucks, both through the front door on Strongs Avenue and at the back entrance. In delivering to the back entrance trucks passed from Strongs Avenue over the claimed right of way.

"23. The tenants of the apartment used both the front and rear entrances to the apartment as their desires and convenience dictated. In using the back entrance they passed to and from Strongs Avenue over the claimed right of way.

"24. No one ever asked the defendant, nor his predecessors in title, for permission to use the claimed right of way for any purpose. The use as above described was in its entirety open and notorious. It was known to at least one of the defendant's predecessors in title and ought to have been known by all of them.

"25. No one ever interfered with the use of the claimed right of way as herein described from 1916 until the defendant made plans to fence it off in the early part of 1946. This purpose on the part of the defendant gave rise to this litigation.

"28. Defendant knew casually of the use of the claimed right of way before he purchased the lot. He became very conscious of it immediately after.

"30. The plaintiffs' use of the disputed strip has been open and under a claim of right since 1916. Standing alone, it has not been notorious; together with use of the tenants and those associated with

them it has been. It has not been exclusive and continuous by itself; together with the use of tenants and those associated with them it has been. It has been hostile to the owners, and so has the use of the tenants and those associated with them.

"31. The plaintiffs have no prescriptive right of way over the defendant's land.

"32. I do not find the implication to be that the use of the several tenants and those associated with them, as described above, was under and by virtue of their leases in such a way that their use goes to establish prescriptive rights in the plaintiffs."

Passing over the questions raised by the defendant as to the adequacy of plaintiffs' exceptions to the findings of fact, the only points briefed by the plaintiffs refer to their exception to finding 31, and to the failure of the chancellor to find as requested, "that the use of said disputed strip by the tenants and family of the plaintiffs was under circumstances justifying the implication that said disputed strip was used by said tenants under and by virtue of their several leases". Consequently the exception to the failure to find that the use of the claimed right of way by the plaintiffs, standing alone, was sufficient to establish the prescriptive rights, is waived, and the only question left for decision is whether the tenants' use thereof inures to the plaintiffs' benefit, so as to support their claim to a prescriptive right of way.

In briefing their exceptions plaintiffs' entire argument is addressed to the proposition that the findings as made, and the necessary inferences therefrom, support their requested finding, and that when the use of the tenants is combined with the use of the plaintiffs, all of the requisites for a title to the right of way by prescription are present, as appears by finding 30, and therefore finding 31 was erroneous.

The right to an easement in another's land acquired by long use and enjoyment is analogous to the right acquired by adverse possession; and the rules of law applicable to the two cases are in harmony. *D'Orazio* v. *Pashby,* 102 Vt 480, 485, 150 A 70; *Smith* v. *Vermont Marble Co.,* 99 Vt 384, 395, 133 A 355; *Barber* v. *Bailey,* 86 Vt 219, 223, 84 A 608, 44 LRANS 98.

For the adverse possession of a third person's land, or the

adverse use of an easement thereover, by a tenant under his lease to inure to the benefit of the landlord so as to support the latter's title to such land by adverse possession, or his right to such easement by prescription, such land or easement must be, either expressly or impliedly, within the terms of the lease. *Deregibus* v. *Silberman Furniture Co.,* 121 Conn 633, 186 A 553, 105 ALR 1183; *West* v. *Price,* 2 J. J. Marsh. Ky 380; *Holmes* v. *Turner's Falls Co.,* 150 Mass 535, 23 NE 305, 6 LRA 283; *Elwell* v. *Barbrick,* 279 Mass 272, 181 NE 184; *Capps* v. *Merrifield,* 227 Mich 194, 198 NW 918; *Schofield* v. *Harrison Land & Min. Co.,* Mo, 187 SW 61; *Doe ex dem. Smyth* v. *Leavens,* 3 U.C.Q.B. 411. Adverse possession to ripen into title must be such as would have exposed the one in possession to an action because of what was done by him, or by his authorization and direction, at any time during the prescriptive period that his possession continued. *Elwell* v. *Barbrick, supra.* An independent adverse occupation by a tenant of another's land, not purporting to be covered by the terms of the lease, and not based upon any authorization purporting to be conferred therein by the lessor, does not inure to the benefit of the landlord. *Capps* v. *Merrifield, supra.*

██ Finding 31 is plainly a conclusion of law, and cannot stand if it is inconsistent with the findings upon which it is based. *Smith* v. *Vermont Marble Co.,* 99 Vt 384, 396, 133 A 355; *State* v. *Hallock,* 114 Vt 292, 295, 44 A2d 236. The exception to this finding is in effect, if not in form, the same as if taken to a judgment based upon facts found, where the question is whether the findings are such as to support the judgment. *Schwarz* v. *Avery,* 113 Vt 175, 180, 31 A2d 916. Consequently the rules, that doubtful findings are to be construed in favor of the decree if this can reasonably be done, *Read* v. *Hendee,* 100 Vt 351, 354, 137 A 329; *Glass* v. *Newport Clothing Co.,* 110 Vt 368, 375, 8 A2d 651; *Hooper* v. *Levin,* 112 Vt 321, 325, 24 A2d 337; *State* v. *Malmquist,* 114 Vt 96, 107, 40 A2d 534, that we must assume, in favor of the decree, that the trial court inferred such facts from the other facts certified as it ought to have done, or might fairly have done, *Labor* v. *Carpenter,* 102 Vt 418, 422, 148 A 867; *Lowe* v. *Green Mountain Power Corp.,* 111 Vt 112, 117, 11 A2d 219; *State* v. *Malmquist, supra,* and that we do not for the purpose of reversing a judgment read into the findings of fact something which is not there, and which is not a necessary inference from the facts found,

*Hinsman* v. *Marble Savings Bank,* 102 Vt 217, 223, 147 A 270; *St. Albans Hospital* v. *City of St. Albans,* 107 Vt 59, 62, 176 A 302, apply.

It is argued that by necessary implication the tenants of the store and apartment used the disputed right of way as a part of their leased property, since it would be meaningless to have a door located in the side of the building unless the right to pass over the land to the street for ingress and egress went with it. There was no finding that the building and the doorway were not there when the plaintiffs bought the property, at which time there was no way to reach this entrance without passing over and trespassing upon what is now defendant's land. Under the foregoing rules such circumstances, reasonably construed, do not compel such an inference, as they must if it was a necessary inference.

The plaintiffs in support of their exception to the denial of the requested finding rely entirely upon *Capps* v. *Merrifield,* 227 Mich 194, 198 NW 918, from which they quote to the effect that the test to be applied in determining a landlord's claim of title through adverse possession by his tenant, to adjoining land not within the description in the lease, was whether the tenant was in possession of such land because of his lease, or was guilty of trespass as an individual; and where, after a review of the evidence, it was stated, that the jury could have found that the landlord believed that the land in question was covered by his deed, and that he and his tenant understood that the right to occupy it passed to the latter under his lease, and, if so, that the possessory rights acquired by the tenant would inure to the benefit of the landlord.

Were it not for the last part of finding 20 that "plaintiffs were at all times in a position to claim, if need be, that the acts of the tenants were their own acts, not those of the landlord", which, whether excepted to or not, is not mentioned in the brief, and had finding 31 and the decree been in favor of the plaintiffs, we might possibly assume that the chancellor could have inferred from the other findings that the plaintiffs and their tenants understood that the right to use the claimed right of way passed to the tenants under their leases. But, since finding 31 and the decree are in favor of the defendant, and since the quoted finding, under the test to be applied according to *Capps* v. *Merrifield, supra,* negates such an understanding, and since doubtful findings are to be construed in favor of finding 31 and the decree if this can reason-

ably be done, no argument has been advanced that justifies the requested finding as a necessary inference. Without such a finding the exception to finding 31 cannot be sustained.

*Decree affirmed.*