375 A.2d 964

JERRY BROWN FARM ASSOCIATION, INC. *vs.*
ORRIN P. KENYON, II AND LILLIAN H. KENYON.

JULY 29, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

44

Bevilacqua, C.J. This is an appeal by the plaintiff from a judgment for the defendants in a civil action to enjoin the defendant[1] from passing over the plaintiff's road. The plaintiff also sought damages, and the defendant counter-claimed for damages and an injunction against interference with her right to use the road. Trial was held before a justice of the Superior Court sitting without a jury. The trial justice ruled that the defendant had acquired an easement appurtenant by prescription and entered an order permanently enjoining the plaintiff from interfering with her right-of-way. We affirm.

---

[1] Orrin P. Kenyon, II, died on April 2, 1971.

The plaintiff, Jerry Brown Farm Association, Inc. (the association), a Rhode Island corporation, is the owner of Jerry Brown Farm on the west shore of Point Judith Pond in South Kingstown. Shareholders of the association are owners of cottages situated on the farm. Prior to 1948 access from the Highway U.S. 1 (Post Road) to the farm was by means of a right-of-way through neighboring farmyards. In order to provide direct access from Post Road to Jerry Brown Farm, in 1948 the association purchased a strip of land upon which they constructed the road in question, Jerry Brown Farm Road.

Before this road was constructed, the Brownings owned all the land between Post Road on the west and the Jerry Brown Farm on the east, and south of a stone wall which now abuts the entire length of the road. All the land north of the wall between Post Road and the Babcock farm, which abuts Point Judith Pond, was owned by the Whaleys with the exception of a seven-acre Browning parcel measuring 600 feet from east to west which jutted into the Whaley land. Therefore, three purchases were required to secure the land for the road.

In an indenture dated May 1, 1948, Samuel E. and Thelma S. Whaley granted to the association two separate 27-foot-wide strips, one on either side of the 600-foot Browning jut. The indenture reserved a right-of-way over the road to be constructed on that land to the grantors and their successors. By a warranty deed dated May 6, 1948, Thomas W. and Isabel B. Browning conveyed a 35-foot strip, 600 feet long, to the association. That deed also reserved a right-of-way over the conveyed premises to the grantors and their successors. Finally, in an indenture dated July 12, 1948, the Babcocks conveyed the remaining required strip to the association.

Two subsequent real estate transactions are relevant to this case. By warranty deed dated June 4, 1963, the

Whaleys conveyed to Isabel Browning[2] two parcels of land: the first, consisting of approximately 30 acres, lies north of the Jerry Brown Farm Road between the Browning jut and the Babcock land; the second, a 50-foot strip, lies north of the road between Post Road and the Browning jut. In that deed the Whaleys granted Isabel Browning the right to use Jerry Brown Farm Road for egress and ingress from the conveyed premises to Post Road.

By warranty deed dated May 8, 1970, Isabel Browning conveyed to defendant Kenyon and her subsequently deceased husband a parcel which abuts for 175 feet the southerly line of Jerry Brown Farm Road. The deed granted "a right of way * * * to and from the public highways of said town [South Kingstown] over and along the Jerry Brown Farm Road." Mrs. Browning testified that the bank to which the Kenyons applied for a mortgage denied the application because it was not convinced that the Kenyons had access to their land from Post Road by means of a recorded right-of-way. Therefore, Isable Browning, by a quit-claim deed dated July 17, 1970, granted an easement appurtenant to the Kenyons to pass over her fields north of Jerry Brown Farm Road to Post Road. However, this unimproved right-of-way was never used.

A review of the evidence presented at trial reveals that after construction of the road in 1948, those persons who planted the Browning land used the road in order to obtain access to the various Browning fields including the field upon which the Kenyon's house is now located, for their trucks and farm equipment. Thomas Browning planted the fields from 1940 to 1951. After Thomas' death in 1951, his son Edward Browning planted the fields from 1951 to 1954. From 1954 through 1974 the fields were rented to various farmers, all of whom used the road for access. And from the time defendant and her husband moved into the house they built on the lot purchased from the Brownings in 1970, they

---

[2]Thomas Browning died in 1951.

used the Jerry Brown Farm Road for access to and from Post Road. Although the association placed a saw horse with a sign reading "Road Closed" at the entrance to the road once a year, the saw horse only covered a small portion of the road. Vehicles desiring access would simply go around the sign.

In December of 1970, the association commenced this action in Superior Court, seeking damages for trespass and an injunction prohibiting defendant from using its road. The defendant claimed several defenses: that Jerry Brown Farm Road is a public highway; that defendant has an easement appurtenant both by grant and by prescription to pass over the road; and that plaintiff by its actions is estopped from denying defendant's right to use the road. The defendant also counterclaimed for damages and an injunction against interference with the easement.

In his decision the trial justice ruled that defendant had failed to prove that Jerry Brown Farm Road is a public way. He further decided that defendant had not established an easement by grant. However, he ruled that defendant and her predecessor in title had acquired the claimed easement by prescriptive use. From the judgment of the trial justice granting a permanent injunction from interference with defendant's easement, plaintiff now appeals. The only substantial question before us is whether a term of adverse use of an easement by a tenant, under a lease which does not expressly mention the easement, can be tacked onto that of the landlord.[3]

I

The plaintiff argues that there was no continuous use by defendant and her predecessor in title for 10 years, as required by G.L. 1956 (1969 Reenactment) §34-7-1, because

---

[3]In her brief defendant urges that the trial justice erred in finding that Jerry Brown Farm Road was not a public way by use. However, a party who has not prosecuted an appeal will not be permitted to attack the findings of the trial justice. *Chappell* v. *Odd Fellows' Home, Inc.*, 85 R.I. 429, 132 A.2d 72 (1975).

the use of the road by the Browning's tenants cannot be considered when computing that period. Citing *Bell* v. *Bomes*, 78 R.I. 37, 78 A.2d 362 (1951), plaintiff contends that since there was no evidence that the leases mentioned the claimed easement, the terms of the tenant's adverse use cannot be tacked onto that of the landlord. We do not agree.

In *Bell* v. *Bomes, supra,* we considered the situation of an adverse use initiated by the tenant. Unlike the instant case, there was no pattern of adverse use by the landlord prior to the lease. Nor was there any other circumstances from which the landlord's authorization of the tenant's adverse use could be implied. In that case we said:

> "In the absence of any reference in the lease of an alleged dominant tenement to a right of way over an alleged servient tenement, adverse user of such a way by the lessee however long continued is of no effect in the creation of an easement by prescription * * * ." *Id.* at 41, 78 A.2d at 364.

However, the *Bell* case does not stand for the proposition that such reference must be express. Most jurisdictions which have considered the issue have stated that the tenant's prescriptive use may be tacked to that of the landlord where the easement is either expressly or impliedly within the terms of the lease. *Deregibus* v. *Silberman Furniture Co.*, 121 Conn. 633, 186 A. 553 (1936); *Toto* v. *Gravino*, 37 Del. Ch. 431, 144 A.2d 237 (1958); *Abatiell* v. *Morse*, 115 Vt. 254, 56 A.2d 464 (1948). We are of the opinion that our holding in *Bell* v. *Bomes, supra,* requires a finding that the easement was expressly referenced in the lease before the tenant's use can be tacked only where there are no circumstances which establish that the easement was impliedly within the terms of the lease.

The basic principle is that if a tenant possesses land as a tenant, his possession inures to the benefit of the landlord. However, if a tenant occupies the land without authorization from the landlord, i.e., as a trespasser upon the land of

a stranger, the trespass is his, and the penalties and compensations, if any, of the trespass are his also. *Capps* v. *Merrifield*, 227 Mich. 194, 196, 198 N.W. 918, 918 (1924). Thus, "the use by a tenant can be employed in finding the requisite prescriptive period only when such use can be said to have been expressly or impliedly (from the circumstances) embraced within the terms of the tenancy itself." *Toto* v. *Gravino*, *supra* at 433, 144 A.2d at 239.

Circumstances which may establish that the terms of the tenancy impliedly embraced the easement include, among others, representation by the landlord that such land was within the lease or the landlord's knowledge of and assent to the tenant's use of the land. *Deregibus* v. *Silberman Furniture Co.*, *supra*. A long established "use" pattern initiated by the landlord and continued by the tenants together with a physical appearance of the claimed easement in relation to the leased property which makes it reasonable to infer that the tenant believed the use of the land was covered by the tenancy are also circumstances which tend to support the conclusion that the easement was impliedly included in the tenancy. *Toto* v. *Gravino*, *supra* at 434, 144 A.2d at 239.

Here, the right to use the road was not shown to have been expressly given in any pertinent lease. Thus the issue is whether the right to use the road was impliedly embraced within the terms of the leases by virtue of the circumstances under which they were given. The trial justice reached no specific conclusion as to whether the easement was impliedly included within the terms of the tenancy, nor did he set out the findings of fact upon which such a conclusion would be based. He merely stated that the Brownings and Kenyons had been in open, uninterrupted and adverse use of the road since 1948.

However, the record in the instant case contains uncontroverted testimony that the Brownings used the road continuously from the time of its construction. After the fields were leased, the Browning tenants continued to use the road

in the same manner. Mrs. Browning's testimony indicated that she knew her tenants used the road. Furthermore, Hollis H. Tucker, who leased the Browning fields from 1956 through 1967, testified that the Jerry Brown Farm Road was the only access he had to the leased parcels.

It is clear from the record that the testimony to which we here refer was uncontradicted and must be considered as constituting undisputed evidence bearing directly upon the issue of whether the claimed easement was impliedly within the terms of the lease. The drawing of inference is initially the function of the trial justice, and his conclusion will be accepted by this court if the inference he drew was reasonable even though other equally reasonable inferences might have been drawn. *Providence & Worcester Co.* v. *Exxon Corp.,* 116 R.I. 470, 486, 359 A.2d 329, 338 (1976). However, this court may draw inferences from undisputed facts and testimony, and where the trial court has not drawn any inference at all from such facts and testimony, this court can draw a reasonable inference therefrom. *See Vance* v. *Rood,* 101 R.I. 608, 613, 226 A.2d 143, 145 (1967); *Carpenter* v. *Dos Santos,* 96 R.I. 334, 337, 191 A.2d 282, 283 (1963). In our opinion, when the clear and convincing evidence to which we refer is taken as a whole, it is entirely reasonable to infer therefrom that the claimed easement was impliedly within the terms of the lease.

## II

The plaintiff also argues that the trial justice erred in finding continuous use because the testimony of Isabel Browning and her son Edward Browning as to the nature and extent of their use was so vague that defendant failed to meet her burden of proof of establishing continuous use by the Brownings. One who claims as easement by prescription must establish open, adverse and continuous use under a claim of right by strict proof, that is, by clear and satisfactory evidence. *Foley* v. *Lyons,* 85 R.I. 86, 90, 125 A.2d 247, 249 (1956); *Tefft* v. *Reynolds,* 43 R.I. 538, 543, 113 A. 787,

789 (1921). The determination of whether the claimant sustained this burden of proof involves an exercise by the trial justice of his factfinding power. It is well-settled that the trial justice's findings of fact will be upheld unless they are clearly wrong or unless he has misconceived or overlooked material evidence. *Russo* v. *Stearns Farms Realty, Inc.* 117 R.I. 387, 391, 367 A.2d 714, 717 (1977); 1 Kent, *R.I. Civ. Prac.* §52.5 at 384 (1969).

After a careful examination of the record, we are of the opinion that the trial justice did not err in finding continuous use by the Brownings. The plaintiff relies upon only a portion of the pertinent evidence and ignores other explicit testimony by the same parties as to the nature and extent of the use. As discussed above, there is ample evidence that since 1948 the road was continuously used by those persons who planted the Browning fields, including the field upon which Kenyon's house is now located, to obtain access to and from Post Road for their trucks and farm equipment.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Robert B. Gates, Esq.*, for plaintiff.

*Edward Botelle, Esq., Hershell Smith, Esq.*, for defendant.